NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-204                                      Appeals Court


M.B.  vs.  J.B.


No. 13-P-204.

Worcester.     January 10, 2014.  -  August 7, 2014.

Present:  Kantrowitz, Vuono, & Sullivan, JJ.


Abuse Prevention.  Practice, Civil, Venue, Waiver.
    Jurisdiction, Probate Court.  Waiver.



    Complaint for protection from abuse filed in the Worcester
Division of the Probate and Family Court Department on June 22,
2012.

    A motion to extend an abuse prevention order and a motion
to dismiss were heard by Denise L. Meagher, J.


    Lawrence F. Army, Jr. for the defendant.
    B.J. Krintzman for the plaintiff.


    SULLIVAN. J.  This is an appeal from an abuse prevention

order issued on an ex parte basis, and extended after notice and

a hearing by a judge of the Worcester Division of the Probate

and Family Court Department.  The defendant contends that the

Worcester Probate and Family Court lacked jurisdiction to enter

the orders, and that the plaintiff failed to establish that she was in reasonable fear of imminent serious physical harm. We affirm.

1. Background. This case has a complex procedural history which we set forth in some detail to provide context for the issues raised on appeal.[1]

The parties separated in August of 2011, and M.B. moved from the marital home in Worcester County to a second home on Cape Cod. The divorce action was filed on November 9, 2011, in the Worcester Probate and Family Court. Beginning on November 11, and continuing until December 9, 2011, J.B., then age 53, sent M.B. multiple electronic mail (e-mail) and text messages, called M.B. repeatedly, had her cable and internet service cut off, appropriated her bank password, took money out of her bank account, took two of her cellular telephones, changed her telephone service provider account password, and attempted to access her telephone records.

On December 9, 2011, the parties agreed to a stipulation in the divorce case which included an order restricting all

_____

[1] The record includes affidavits, testimony, and documents offered by M.B. in support of her June 22, 2012, application for an ex parte abuse prevention order in the Worcester Probate and Family Court, and the July 6 evidentiary hearing held in connection with the extension of that order. The facts set forth here are drawn from that record unless otherwise specified.

communication except e-mail related to visitation of their teenage son. The probate judge entered the stipulation as a temporary order. However, J.B. continued to text and call M.B.[2] The judge orally ordered him to cease contact in February of 2012, and issued a written order on March 19, 2012. J.B. continued to contact M.B. M.B. filed an application for an abuse prevention order on May 10, 2012 in the Worcester Probate and Family Court. On May 14, 2012, the judge again issued a no contact order and imposed monetary sanctions of $500 for each contact in violation of the no contact order.

On May 21, 2012, the probate judge heard evidence on M.B.'s complaint for contempt, and began to hear evidence on the application for an abuse prevention order. At the conclusion of the court day, and after ascertaining that the no contact order had not been violated between May 10 and May 21, the probate judge continued the evidentiary hearing on the abuse prevention order. She stated that the order would not be issued at that time, and that a further hearing would be scheduled.[3] She

---

[2] M.B. described these communications as angry, accusatory, and degrading. A police report stated that J.B., posing as "Charles," contacted the superintendent of schools and the chair of the school committee (of the municipality where M.B. was employed) and made accusations of wrongdoing. The school department issued a no trespass order against J.B. on December 20, 2011.

[3] For reasons unclear on the record, the hearing was rescheduled to August 30, 2012. The first request for an abuse

emphasized that the no contact order remained in full force and effect.

Between May 30 and June 20, 2012, M.B. received more than forty text messages. Several came directly from J.B.'s telephone number, while others came from unknown telephone numbers. J.B.'s bank statement showed that J.B. had purchased a "Spoof" card with his credit card in November of 2011. M.B. testified that the Spoof card made the text messages appear to come from another telephone, and that based on their content, she believed they came from J.B. The content of the texts permitted the inference that they came from J.B., and also indicated that he was following and watching her.[4] Between May 10 and June 19, M.B. also received approximately thirty telephone calls from an unknown or private number.[5]

_____

prevention order in Worcester was not treated as an emergency motion and there was no objection to the continuance on the record.

[4] For example, the text received on May 30, 2012, said, "Oh, you're eating pizza and having a beer while I have to pay for a lawyer." This text was received while M.B. was eating pizza. On June 8, 2012, M.B. received a text calling her a "groupie" while listening to a band. On June 10, 2012 she received a text about the sunset while watching the sun set. While attending her son's graduation with a female friend on June 3, 2012, M.B.'s friend received a text that said "Is there any peroxide left in this state? You're hanging out with an adulterer. Great legacy for the two of you."

[5] J.B. contends that the evidence regarding the Spoof card, the messages that appeared on the friend's telephone, and the texts and telephone calls from unknown sources should not have been admitted because the evidence was speculative and

M.B. then filed a new application for an abuse prevention order in the Falmouth District Court on June 13, 2012. An ex parte order issued. Later that day, M.B. brought her car to be inspected, and a global positioning system (GPS) tracking device was found on the underside of her car. M.B. promptly reported this to the police, who initiated an investigation. Meanwhile, the ex parte restraining order expired on June 22, 2012. A judge of the Falmouth District Court held a hearing on that date at which M.B. appeared pro se. J.B. appeared through counsel, who filed a motion to dismiss on the grounds of res judicata, stating that the judge of the Worcester Probate and Family Court had denied a request for a restraining order on May 21, 2012, that judgment had entered, and that the affidavit in support of the June 13 application referenced events which had been before the probate judge in Worcester in May. Although the affidavit filed by M.B. in the Falmouth District Court in support of the application for an abuse prevention order did reference events occurring in April, it also described, among other things, the numerous text messages she received between June 8 and June 12,

inadmissible under the rules of evidence. In G. L. c. 209A proceedings, strict compliance with certain common-law rules of evidence, such as those asserted here, is not required, "provided that there is fairness in what evidence is admitted and relied on." Frizado v. Frizado, 420 Mass. 592, 597-598 (1995). See Mass. G. Evid. § 1106 (2014). We discern no abuse of discretion in the judge's conclusion that the evidence offered was sufficiently reliable to warrant admission.

messages that strongly suggested M.B. was being followed. She attached a timeline to the affidavit detailing the date, source, and content of scores of text messages and calls from J.B.'s telephone number and other telephone numbers between May 26 and June 12, 2012. She stated, "[J.B.] uses the Spoof [card] to terrorize me," and that "he appears to be escalating and I am afraid."

At the hearing on June 22, 2012, in Falmouth, J.B.'s counsel further represented to the court that there had been a full evidentiary hearing before the Worcester Probate and Family Court judge and that the current application was an example of forum shopping. He did not inform the judge, either orally or in writing, of the existence of the no contact order. In fact, the evidentiary hearing in Worcester had been continued, the no contact order was extant, and the application for an abuse prevention order remained pending.[6] M.B. told the judge that the evidentiary hearing in Worcester had been continued, and that she was relying on events that occurred after May 21, 2012.[7] She

_____

[6] At a subsequent hearing in Worcester on July 6, 2012, the probate judge stated that she had not dismissed the previous application for an abuse prevention order, and that the matter had been held for further evidentiary hearing on August 30, 2012. There was no action entered on the docket. No judgment was entered on the docket.

[7] M.B., appearing pro se, told the judge that the order had not entered in Worcester on May 21, 2012, because there had been no violations for a ten day period, but that since that time

stated she was "petrified and didn't know what to do."  The judge allowed J.B.'s motion, and sua sponte ordered the plaintiff to return to Worcester, stating, "You should go back to the Worcester Court and have - - bring that all up up there." The temporary order was then vacated.  The Falmouth District Court docket stated, "Prior 209A order denied in Worcester Probate and Family Court."

M.B. drove to Worcester that afternoon where she again sought a 209A order.  A temporary abuse prevention order was allowed on an ex parte basis by the same probate judge who heard the divorce action.  On June 25, 2012, after the order was issued, J.B. came to M.B.'s house and M.B.'s friend received a text message stating, "Chubby's going to be in the newspaper." M.B. understood this statement to be a threat directed at her.[8]

On July 6, 2012, an evidentiary hearing was held in Worcester on the extension of the ex parte order at which J.B. appeared through counsel.[9]  J.B. moved to dismiss the application for an abuse prevention order pursuant to Mass.R.Dom.Rel.

_____

J.B. repeatedly had sent her text messages, and that she had discovered a GPS device placed on her car.  M.B. also attempted to tell the judge about the evidentiary hearing in Worcester, but the Falmouth hearing was abruptly terminated.

[8] J.B. called M.B. "Chubby."

[9] J.B. was incarcerated for an alleged violation of the temporary restraining order at the time of the hearing.

12(b)(3) on the grounds that the Worcester Probate and Family Court lacked jurisdiction over the application because M.B. was a resident of Barnstable County, and the matter had to be heard there.  See G. L. c. 209A, § 2.  The probate judge who heard the divorce and the ex parte motion denied J.B.'s motion and extended the temporary abuse prevention order for a period of one year.

2.  Discussion.  A.  Venue.  While the propriety of the ruling of the probate judge, not the District Court judge, is before us, we take this opportunity to clarify the application of the choice of venue provisions of G. L. c. 209A, § 2, with respect to both the Probate and Family and District Court departments of the trial court.

General Laws c. 209A, § 2, provides a choice of venue to the plaintiff, who may bring an application in the court of the county of her current residence, or if he or she has left a previous residence or household to avoid abuse, in the court having venue over the previous residence or household.[10]  The

---

[10] General Laws c. 209A, § 2 provides:

"Proceedings under this chapter shall be filed, heard and determined in the superior court department or the Boston municipal court department or respective divisions of the probate and family or district court departments having venue over the plaintiff's residence.  If the plaintiff has left a residence or household to avoid abuse, such plaintiff shall have the option of commencing an action in the court having venue over such prior residence or household, or in the court having

purpose of the venue provision of the statute, which is intended to facilitate a plaintiff's application for an order, and to encourage the prompt and timely resolution of the application, was derailed in this case.

M.B. applied for a restraining order in the Worcester Probate and Family Court, where she had previously resided.  For reasons not apparent in the record, the case was continued for over three months.  See Singh v. Capuano, 468 Mass. 328 (2014); Guidelines for Judicial Practice:  Abuse Prevention Proceedings § 5:00 (2011) (Guidelines) (emphasizing the importance of prompt hearings in c. 209A cases).  After the situation escalated in late May, she filed an application for a new abuse prevention order in the county in which she resided, Barnstable County, which was then allowed.[11]  The District Court judge declined to hear the extension motion, and vacated the temporary order, in violation of c. 209A, § 2, which granted M.B. her choice of venue, and in violation of G. L. c. 209A, § 4, which granted her an evidentiary hearing.  See Guideline 2:07 (commentary) ("If the court in which a person initially seeks protection under

_____

venue over the present residence or household." (Emphasis added).

[11] Because the June 13, 2012, application in Falmouth was based on new conduct, it may properly be considered a new application.  For this reason, we do not address the questions raised when a plaintiff files the same application in two courts.

c. 209A has jurisdiction, the person should be heard as soon as possible in that court, and should not be sent to another court"). See also <u>Singh</u> v. <u>Capuano</u>, <u>supra</u> (without first hearing the evidence, a judge should not, over objection, vacate any provision of a c. 209A order once issued); <u>S.T.</u> v. <u>E.M.</u>, 80 Mass. App. Ct. 423, 430 (2011).[12] After M.B. returned to Worcester as directed, sua sponte, by the District Court judge in Falmouth, the defendant moved to dismiss, claiming that Worcester lacked jurisdiction and that only the courts of Barnstable County had the authority to hear the case.

---

[12] Among the many reasons the Guidelines prohibit transfers is that a transfer may "discourage the plaintiff from seeking relief to which he or she is entitled under the law, and may expose the person to additional danger. This is especially so where the other court is at some distance and may be inaccessible to the plaintiff." Guideline § 2:07. Guideline 2:07 also cautions against the issuance of conflicting orders. In this respect, J.B.'s counsel's mischaracterization of the actions of the probate judge and the selective characterization of the plaintiff's application is of particular concern. However, as guideline 2:07 makes clear, the potential for conflicting orders is not a basis for transferring the matter, or for vacating an extant order without evidentiary hearing or an opportunity to be heard. See <u>Singh</u> v. <u>Capuano</u>, 468 Mass. 328 (2014); <u>S.T.</u> v. <u>E.M.</u>, 80 Mass. App. Ct. 423, 430 (2011). Rather, the judge is directed to obtain a copy of the prior order. Had the Guidelines been followed here, it would have become obvious that the judge of the Probate Court had not issued a final order or judgment on the pending application, there being no such order of judgment on the docket. Moreover, the papers on file and the plaintiff's pro se argument were sufficiently clear to place the District Court judge in Falmouth on notice that the plaintiff was alleging new and serious violations over and above those previously alleged before the probate judge.

J.B. contends that G. L. c. 209A, § 2, barred the probate judge from hearing M.B.'s application because M.B. failed to establish that she left her residence in Worcester County to avoid abuse.  This issue was presented below as a matter of venue or territorial jurisdiction.  On appeal, J.B. further refines this argument, claiming that a court that lacks territorial jurisdiction is without any authority to enter an abuse prevention order.  In support of this contention, J.B. relies on Guideline 3:03, which states that "[t]he requirements set forth in G. L. c. 209A, § 2, regarding where abuse prevention actions must be filed and heard should be considered jurisdictional.  That is, if these requirements are not met, the court should be considered to have no authority to act on the complaint."  The comments to the Guideline further state that because the venue requirements of § 2 "<u>appear to be prerequisites to the court's authority to act, they should be considered jurisdictional</u>," and that the defect is one that cannot be waived.[13]

---

[13] Notwithstanding the broad language of Guideline 3:03, Guideline 1.09 provides a cohesive framework for dealing with applications to a court which lacks venue.  Guideline 1:09 incorporates a standing order of the Chief Administrative Justice pursuant to her statutory powers to transfer cases between judicial departments.  See G. L. c. 211B, § 9 (xix) (2011).  If a plaintiff makes application to a court lacking venue, and the judge determines that safety would be compromised by a transfer to the court having venue, "the judge may act for the appropriate court and conduct a hearing on the plaintiff's

J.B. contends that the abuse prevention order is therefore "void" and likens territorial jurisdiction or venue under c. 209A, § 2, to subject matter jurisdiction. The obvious strategic advantage of this argument is that subject matter jurisdiction may be raised at any time and may not be waived. See Doe, Sex Offender Registry Bd. No. 3974 v. Sex Offender Registry Bd., 457 Mass. 53, 57 (2010). However, once a broad grant of jurisdiction is given to a court to hear a class of cases, the court has subject matter jurisdiction. Ibid. Since it is clear that the Legislature has "empowered the [Probate and Family Court] to hear [this] particular 'genre' of cases," the Probate and Family Court had subject matter jurisdiction over the application for an order. Ibid. (citations omitted). See G. L. c. 209A, §§ 1(c), 2; Champagne v. Champagne, 429 Mass. 324, 327 (1999); Guideline 3.02 (Jurisdiction) (2011).

Any jurisdictional limitations imposed by G. L. c. 209A, § 2, are those of territorial jurisdiction only. In this

---

request." Ibid. The "primary issue for the court . . . is to ensure the safety of the plaintiff." Ibid. The Guidelines offer two options where venue is improper to transfer the case, after determining the safety of the plaintiff will not suffer and he or she has transportation to the receiving court, or hear it. An order may not be denied or vacated over objection without an evidentiary hearing or an opportunity to be heard. To do so subverts the purposes of the statute, that is to promote the safety of those who seek abuse prevention orders. Singh v. Capuano, supra, at 332, citing S.T. v. E.M., supra, at 429-430.

context, territorial jurisdiction is a matter of venue.  See Paige v. Sinclair, 237 Mass. 482, 484 (1921); Blood v. Lea, 403 Mass. 430, 435 (1988).  Cf. Commonwealth v. Mannos, 311 Mass. 94, 103 (1942); Opinions of the Justices, 372 Mass. 883, 896–897 (1977).  Section 2 is, in fact, entitled "Venue."  See Tyler v. Michael's Stores, Inc., 464 Mass. 492 (2013) (construing a statute in harmony with its title).  Compare ROPT Ltd. Partnership v. Katin, 431 Mass. 601, 605 n.10 (2000) (statute which expressly uses the word "jurisdiction" is not a venue statute).  Unlike a lack of subject matter jurisdiction, a defect in venue does not irrevocably strip a court of all authority to hear a case.  Paige v. Sinclair, supra ("A plea that the action is brought in the wrong county or wrong district is commonly matter of abatement and does not go to the jurisdiction of the court").

Venue may be waived if not timely raised.  Hazard v. Wason, 152 Mass. 268 (1890); Paige v. Sinclair, supra; Carpenter v. Pomerantz, 36 Mass. App. Ct. 627, 628 n.2 (1994); Buccaneer Dev., Inc. v. Zoning Bd. of Appeals of Lenox, 83 Mass. App. Ct. 40, 45 (2012), quoting from Wachovia Bank, Natl. Assn. v. Schmidt, 546 U.S. 303, 316 (2006) ("Venue is largely a matter of the parties' convenience; venue and subject matter jurisdiction

. . . 'are not concepts of the same order'").[14]  Cf. Commonwealth

v. Robinson, 48 Mass. App. Ct. 329, 336 (1999).  To the extent

the comment to Guideline 3:03 regarding waiver suggests

otherwise, the commentary is inconsistent with the statute, and

the statute controls.  See generally Morales v. Morales, 464

Mass. 507 (2013) (discussing inconsistency between Child Support

Guidelines and the governing statute).

The defendant waived his objection to venue in the

Worcester Probate and Family Court by his conduct.  Cf. American

Intl. Ins. Co. v. Seuffer GmbH & Co., 468 Mass. 109, 113-120

(2014) (defense of personal jurisdiction may be waived by

conduct).  He did so by participating in the May 21, 2012,

---

[14] We recognize that at one point in time the territorial jurisdiction of the Probate and Family Court was considered truly jurisdictional.  See Holt v. Holt, 253 Mass. 411, 414-415 (1925), citing St. 1922, c. 532, § 60 and G. L. c. 215, § 1 (1902).  At the time Holt was decided, the Probate court had "county and not statewide jurisdiction[,] . . . [an] outgrowth[] of the old Ecclesiastical Courts."  Badger, The Probate Courts, Boston B.J. No. 5 (1961).  The approach in Holt appears to have been dictated by the Supreme Judicial Court's conclusion that no authority existed for the reassignment of a case from one Probate Court to another.  The "provincial nature" of this system prompted calls "to refashion the present fourteen separate Probate Courts with their twenty four judges into one statewide court with a Chief Justice."  Badger, supra.  Since Holt, there have been a series of amendments to the governing statutes, culminating in the creation of a statewide Probate and Family Court within the trial court department.  See, e.g., G. L. c. 217, § 8, as amended by St. 1963, c. 819, § 3; G. L. c. 217, § 1, as amended by St. 1978, c. 478, § 128.  The reasoning in Holt no longer applies, as the defect addressed in Holt has been superseded by legislative enactment.

evidentiary hearing on the application for an abuse prevention order without objection.[15] See generally <u>Hazard</u> v. <u>Wason</u>, 152, 268 (1890) (venue waived where defendant answers to the merits); <u>Paige</u> v. <u>Sinclair</u>, 237 Mass. 482, 484. Cf. <u>American Intl. Ins. Co.</u>, <u>supra</u> (defense forfeited by active participation in litigation); <u>LaMarche</u> v. <u>Lussier</u>, 65 Mass. App. Ct. 887, 889-890 (2006) (personal jurisdiction may be waived by "dilatoriness and participation in or encouragement of judicial proceedings"). He then affirmatively relied on the Worcester proceedings to vacate the Falmouth District Court temporary abuse prevention order. By seeking to take advantage of the Worcester proceedings in the Falmouth case, J.B. "manifest[ed] an intent to submit to the [Worcester Probate and Family] court's jurisdiction," and forfeited any claim to lack of venue there. <u>Yeldell</u> v. <u>Tutt</u>, 913 F.2d 533, 539 (8th Cir., 1990), cited with approval in <u>American International Ins. Co.</u>, <u>supra</u> (quotation omitted).[16]

---

[15] M.B.'s June 22, 2012, application for a temporary order was docketed as a new application, but this fact is not dispositive of the waiver analysis which looks to the conduct of the defendant. Here, the defendant's arguments in Falmouth precipitated the multiple filings. He participated in the prior proceedings in Worcester and attempted to leverage the Worcester proceedings for his benefit.

[16] M.B. argues that J.B.'s conduct at the hearings also precludes him from challenging venue on the grounds of judicial estoppel. See <u>Niles-Robinson</u> v. <u>Brigham & Women's Hospital, Inc.</u>, 47 Mass. App. Ct. 203 (1999). In light of our disposition, we need not address this issue.

Finally, even if venue had been raised, the evidence before the judge was sufficient to permit the inference that M.B. had left the parties' home in Worcester county and moved to Barnstable County to avoid abuse. There was evidence in the record before the probate judge that before M.B.'s move to Barnstable County, J.B. had anger management issues, possessed an FID card, had been violent, and had "been physical" prior to their separation. The judge did not err in hearing the application.

B. Sufficiency. A plaintiff seeking the extension of an abuse protection order must prove "by a preponderance of the evidence[] that the defendant has caused or attempted to cause physical harm, committed a sexual assault, or placed the plaintiff in fear of imminent serious physical harm." McDonald v. Caruso, 467 Mass. 382, 386 (2014). See Iamele v. Asselin, 444 Mass. 734, 736 (2005); G. L. c. 209A, §§ 1, 3. As is often the case, this appeal focuses on whether the plaintiff had a reasonable fear of imminent serious physical harm. G. L. c. 209A, § 1(b). Iamele v. Asselin, supra.[17] J.B. contends that the application "was not based upon any physical harm committed or threatened by [him]," and that in the absence of testimony

_____

[17] Neither party has argued, and we do not address, whether the order would have been warranted under c. 209A, § 1(a), based on a prior history of abuse. Compare Callahan v. Callahan, 85 Mass. App. Ct. 369 (2014).

that he hurt or threatened M.B. after their separation, in the six months prior to the extension hearing on July 6, 2012, the evidence is insufficient to establish that harm was serious or imminent.

This argument conflates the first prong of the statutory definition of abuse, actual or threatened abuse, with the second, reasonable fear of imminent serious bodily harm.  See G. L. c. 209A, § 1(a, b).  The purpose of a c. 209A order is to protect a plaintiff from the likelihood of abuse.  Iamele v. Asselin, supra, at 739.  A plaintiff need not wait until an assault occurs to seek protection, although "[i]f the plaintiff were suffering from attempted or actual physical abuse, see G. L. c. 209A, § 1(a), . . . there is no question that an extension should be granted."  Id. at 740 n.3.

As noted above, M.B. provided affidavits stating that J.B. had "anger management issues," and that there had been "a past history of violence."  She also testified that he had been "physical" with her prior to their separation.  In light of "the totality of the circumstances," id. at 740, that is, a past history of anger and violence, coupled with the conduct which followed the filing of the divorce petition, and the ongoing escalation of contact in violation of the no contact orders, the evidence was plainly sufficient to support the issuance of the

abuse prevention order.  See <u>Vittone</u> v. <u>Clairmont</u>, 64 Mass. App. Ct. 479, 485 (2005).

<u>Judgment affirmed</u>.