S.T. *vs.* E.M.

No. 10-P-1377.

Middlesex. May 12, 2011. - September 19, 2011.

Present: WOLOHOJIAN, MILKEY, & HANLON, JJ.

*Abuse Prevention. Due Process of Law,* Abuse prevention. *Witness.*

In an abuse prevention proceeding brought in District Court pursuant to G. L. c. 209A, the judge impermissibly prevented the plaintiff from calling the defendant as a witness; therefore, this court vacated the judge's order, which vacated a protective order previously issued against the defendant, and remanded the matter for a new hearing. [428-429]

Statement regarding the minimum standards of fairness that must be observed at abuse prevention proceedings conducted under G. L. c. 209A. [429-431]

COMPLAINT for protection from abuse filed in the Somerville Division of the District Court Department on February 23, 2010.

An abuse prevention order was vacated by *Neil J. Walker*, J.

*Thomas R. Ayres, II* (*Kristyn M. Bunce* with him) for the plaintiff.

*Jill S. Gately* for the defendant.

HANLON, J. The plaintiff appeals from the decision of a District Court judge vacating an abuse prevention order, previously issued against the defendant, pursuant to G. L. c. 209A. She argues that the judge impermissibly prevented her from calling the defendant as a witness at the hearing. We agree.

The plaintiff applied for and received an ex parte abuse prevention order on February 23, 2010.[1,2] On March 10, 2010, both

---

[1] In her affidavit supporting the application for the order, the plaintiff stated that she and the defendant were undergraduate students at a nearby university. They began a dating relationship in February, 2009; by the end of the year, the defendant "became increas[ing]ly controlling of [her]," refusing to let her do things alone and "always need[ing] to know where [she] was." She briefly described incidents in which, she said, the defendant threw things at her, and then related an incident in which, she said, the defendant "sexually assaulted" her.

[2] The order directed the defendant not to abuse the plaintiff; not to have

parties appeared at the court with counsel, apparently ready for the extension hearing, although the defendant's lawyer told the judge that she expected several witnesses to arrive soon. After the judge read the plaintiff's affidavit, he asked whether officials at the university the parties attended had been consulted; he expressed a strong preference that the matter be mediated, rather than litigated in court.[3] The judge said that he had, in many cases, resolved such problems "by at least allowing a restraining order to continue without a hearing for a short period of time and ordering them back into mediation with a report to be filed with the Court as to . . . the results of that. In doing so, the restraining order exists only as to abuse. Everything else is deleted or vacated to allow the students to attend classes and be on the campus . . . ." The defendant's lawyer objected to extending the restraining order in any form, stating her view

---

direct or indirect contact with her; to stay away from her residence; and "to leave any common area at the college whenever [the plaintiff] is present in that area." In addition, as required by G. L. c. 209A, § 3B, the order directed the defendant to surrender immediately to the local police department any "guns, ammunition, gun licenses and [firearms identification] cards."

[3]The judge stated, "Have the authorities at [the university] been consulted?" When the defendant's lawyer responded that they were on their way to the court, the judge stated, "I'm not interested in anybody from [the university] coming in, unless they can tell me that they work with these kids to try to mediate the situation." Both lawyers addressed the court: defendant's counsel apparently tried to say that she had called certain school officials as witnesses; plaintiff's counsel stated that the school had "attempted a resolution, but at this point [the plaintiff did] not feel safe on campus." The judge interrupted each lawyer and concluded, "I'm sorry and I, again, point out the fact that I've been hearing a lot of these cases since I've been here. My home is Lowell. I deal with [a different university], and I deal with them fairly frequently. I am satisfied, in most cases, that once the college or university gets involved, they can do a lot more than I can. I will say to you at this point that I will not under any circumstances, unless it can be shown otherwise, . . . prevent any student from physically being on the campus, physically attending any and all classes. . . . I'm going to suggest you might want to sit down and discuss this because I'm going to tell you I'm going to be hard-pressed to continue an order that's going to prevent one student, okay, as opposed to the other, to attend a private institution." The judge continued, for several pages of transcript, explaining that the case should be mediated. He stated that he had had extensive discussions with officials at the university near his home court and had encouraged them to solve such problems internally because "any students, before they appear before this Court, or in Lowell at any event, they're subject, you know — and its mandatory, it's not elective. It's not, well, I don't want to do it. It's mandatory that they at least sit down with the dean of students, with the proctors . . . ."

that if the judge heard the evidence, he would agree that even a no abuse order was inappropriate, because it was not supported by the evidence. The judge responded that he did not think his order was "going to affect anybody because any order that [he issued would be] continued specifically without a hearing and with specifically taking no evidence, with the thought that, again, you know, the matter can be mediated and/or, you know, taken to the authorities at [the university]." The defendant's lawyer responded that she had witnesses present. The plaintiff's lawyer argued that her client wished to keep the existing order intact. The judge explained again his preference for mediation, and also stated that any order that he issued would be "mutual, one against the other." The plaintiff's lawyer then stated, "[O]ur position is just that mediation is inappropriate where one of the students has raped the other student." The judge responded, "Excuse me, that's stricken from the record. Don't ever say that again on the record, unless you have something that you want to put forth to the Court, because I'll refer [this to the] District Attorney's office right now. You want that? You got it."

Thereafter, despite the efforts of both parties to persuade the judge to hold an evidentiary hearing on the restraining order,[4] he suspended the proceeding and arranged for an assistant district attorney to come to the courtroom to speak with the plaintiff. The judge said that if the prosecutor felt "there [was] any merit, then a complaint should be filed." In the meantime, he would give the parties "a month within which to further confer with the authorities at [the university]."

At the request of the defendant's lawyer, the judge retained jurisdiction of the matter; in the meantime, he vacated all but the no abuse and no firearms portions of the existing restraining order. It is not clear from the record before us whether the judge, in fact, also issued a mutual order against the plaintiff. See G. L. c. 209A, § 3, as appearing in St. 1990, c. 403, § 3 ("A court may issue a mutual restraining order or mutual no-

---

[4]In particular, the defendant's lawyer argued that she had witnesses present, including one from out of State, and asked the judge to hold the case for a hearing later in the day. The judge responded that he apologized to the parties, but that he thought it more important that they "now look into the criminal aspects of the case."

contact order pursuant to any abuse prevention action only if the court has made specific written findings of fact").

The parties appeared before the same judge three weeks later; he told them that he would not have time to hear the case, due to court congestion. He again suggested that mediation would be appropriate, saying, "You're in effect throwing on the Court what is really the obligation of the university to assist their students, especially if [the plaintiff] is seriously concerned about her well-being and safety." When plaintiff's counsel drew the judge's attention to certain language in G. L. c. 209A, § 3 ("No court shall compel parties to mediate any aspect of their case"), the judge responded that he was "not unaware of what the statute says" but that he was "aware of the practicalities . . . of these matters," adding, "You know, what's the tuition now at [the university]? Whatever it is, that's [an] awful lot of money." He reiterated that he had an "extremely effective" program at his local university for dealing with these cases.

The defendant's lawyer again argued for a hearing, saying that she had witnesses who would report to the court that mediation had been unsuccessful. The judge responded that he would ask for a special assignment on a particular day to hear the case. The record indicates that the no abuse and no firearms order was continued without modification until April 16.

On the next court date, April 16, 2010, a police officer testified about the statement that she had taken from the plaintiff on March 19.[5] The plaintiff then testified to the following. She and the defendant were in a particular scholars program at the university, and they had had a dating relationship that had deteriorated. The defendant broke up with her but continued to stay in touch with her, frequently asking personal questions that made her uncomfortable. On one occasion, the two went out to dinner, and the defendant told her that he regretted his behavior. They ended the night by having sexual relations.

Thereafter, according to the plaintiff, the relationship became increasingly violent. She described an incident in which the defendant screamed at her and grabbed her; she testified that on

---

[5]The officer declined to provide any additional information about her investigation, and the judge sustained the plaintiff's objection to defense counsel's questions about it.

another occasion, he shoved her into a wall. At some point, she told him that she did not want to have a sexual relationship with him; however, they continued to spend time together. On November 8, 2009, they spent the evening together in the defendant's dormitory room, eating and watching television. The plaintiff was taking a prescription pain killer for an injury to her hand. At some point, she started to feel sick and vomited. According to her testimony, the defendant helped her clean up the vomit and encouraged her to lie on his bed. Thereafter, despite her protests, he touched her sexually and had oral sex with her. The plaintiff testified that, afterwards, although she tried to avoid him, the defendant harassed her, repeatedly texting her and coming to her room where he would yell, throw things, and kick the wall. At one point, she said, he drew a "picture of male genitalia" on a message board outside her dormitory room. She also testified that, when she told school officials that she wanted an order for the defendant to stay away from her, she was told that, if she pursued that course, she would have to drop out of the scholars program at school.

The plaintiff was cross-examined at some length and in some detail about her medical history at the time of her relationship with the defendant. In particular, she was asked about her medication history, her gynecological history, an alleged suicide attempt, and an untrue statement she agreed she had made to the defendant about having lymphoma. She was also asked about meetings with various officials at her school. Finally, she was asked about the alleged rape incident and why she did not report it immediately. Eventually, the judge took over the questioning and asked why she had come to court when she did, given that the sexual assault was said to have occurred the previous November.

The plaintiff responded, in essence, that at the time that she came to court, she believed that the university officials were ignoring her; that she was told that she would have to resign from her program if she insisted on a stay away order; and that she was afraid for her safety. The judge then summarized what he understood to be the history of the university's handling of the matter and concluded, "And it doesn't appear, at least according to this, that you were in any way happy with that." The plaintiff responded that she had tried "to work things out" in

meetings with certain university officials. She told the judge that she had continued to be "terrified all the time" and that the defendant had recently approached her in the cafeteria and stared at her.

There was then some discussion of exhibits offered by the defense. From all we can discern from the record on appeal, defense counsel was still in the middle of her cross-examination at this point; there certainly had been no opportunity for redirect examination, and the plaintiff had not rested her case.[6] The judge then asked the plaintiff's lawyer, "[D]o you have anything else that you want to introduce?" Counsel stated an intent to call the defendant. The judge responded, "You're not calling [the defendant]. . . . He doesn't have to. There's nothing, nothing to suggest that he can be either called as a witness nor does he have to testify." Counsel argued that the matter was a civil case and that, if the defendant chose not to testify, the court could draw a negative inference from that choice. The judge responded, "I beg to differ." Counsel then drew the judge's attention to *Frizado* v. *Frizado*, 420 Mass. 592, 596 (1995) ("The plaintiff must make the case for the awarding of relief. An inference adverse to a defendant may properly be drawn, however, from his or her failure to testify in a civil matter such as this, even if criminal proceedings are pending or might be brought against the defendant"). The judge's response was that the plaintiff would not be permitted to call the defendant as a witness. The defendant never asserted a privilege not to testify, whether directly or through his lawyer. Nor did the judge inquire whether the defendant chose to do so.

There ensued an exchange between plaintiff's counsel and the judge about the credibility of the plaintiff's testimony; the judge inquired several times whether there was any corroboration. He then said, "The matter stands dismissed." Defense counsel said, "Thank you." The plaintiff's lawyer said, "Excuse me, your honor?" The defendant's lawyer said, "The matter stands dismissed." The court clerk said, "Again, after a full hearing on the restraining [order], that matter stands dismissed." The court officer said, "Court, all rise."

*Defendant as plaintiff's witness.* "The burden is on the com-

---

[6]The defendant's lawyer confirmed this view at oral argument.

plainant to establish facts justifying the issuance and continuance of an abuse prevention order." *Frizado* v. *Frizado*, 420 Mass. at 596. However, "[a]n inference adverse to a defendant may properly be drawn . . . from his or her failure to testify in a civil matter such as [an abuse prevention proceeding under G. L. c. 209A], even if criminal proceedings are pending or might be brought against the defendant." *Ibid.* See *Millennium Equity Holdings, LLC* v. *Mahlowitz*, 456 Mass. 627, 643-644 (2010). See also *McGinnis* v. *Aetna Life & Cas. Co.*, 398 Mass. 37, 39 (1986), and cases cited.

We recognize that this judge, on these facts, may not have drawn such an inference, eventually, given his apparent view of the plaintiff's case. Nevertheless, the plaintiff should have been permitted to require the defendant to choose whether to testify. It may be that the defendant would have asserted his constitutional privilege not to testify, through counsel or otherwise. It is also possible that the defendant would have testified about some of the incidents described by the plaintiff and thus corroborated, or contradicted, some or all of her testimony. In any event, it was not the judge's prerogative to make that choice for him.

We reverse and remand for a new hearing. We do not mean to intimate how the matter should be decided after a full and fair hearing. Credibility determinations and an evaluation of the sufficiency of all the evidence are matters for the hearing judge to decide.

We recognize that there is often an informality to c. 209A abuse prevention proceedings in a busy court. See *Frizado* v. *Frizado*, 420 Mass. at 598 ("The Legislature devised a procedure in G. L. c. 209A that is intended to be expeditious and as comfortable as it reasonably can be for a lay person to pursue. Judges often must deal with large numbers of these emotional matters in busy court sessions"). Nonetheless, certain minimum standards of fairness must be observed. First, absent serious court congestion or some other emergency, judges should hear and decide scheduled matters if the parties are ready and wish to have a hearing. Second, judges should not issue, or vacate, any part of an abuse prevention order, over objection, without hearing the evidence and giving the parties an opportunity to

respond.[7] Third, G. L. c. 209A gives a choice of forum to the plaintiff. See G. L. c. 209A, § 2. A judge should not, sua sponte and over objection, discontinue an abuse prevention proceeding because he believes it should move to another forum — whether that forum is mediation, a criminal court, or another Trial Court department.[8] Fourth, each party should be given a fair opportunity to present his case.[9] While a judge surely may exclude irrelevant

[7] See *Vittone* v. *Clairmont*, 64 Mass. App. Ct. 479, 486 (2005) (judge must consider carefully whether serious physical harm is imminent and should not issue a G. L. c. 209A order "simply because it seems to be a good idea or because it will not cause the defendant any real inconvenience"), quoting from *Smith* v. *Joyce*, 421 Mass. 520, 523 n.1 (1995). Once an abuse prevention order is issued, it is recorded in a Statewide domestic violence record-keeping system created by St. 1992, c. 188, § 7. See *Vaccaro* v. *Vaccaro*, 425 Mass. 153, 156 (1997) ("There is nothing in St. 1992, c. 188, § 7, or in G. L. c. 209A, that permits a record to be removed or that authorizes the entry of a judicial order directing expungement of a record from the system"). Cf. *Commissioner of Probation* v. *Adams*, 65 Mass. App. Ct. 725, 737 (2006) ("[A] judge has the inherent authority to expunge a record of a 209A order from the Statewide domestic violence registry system in the rare and limited circumstance that the judge has found through clear and convincing evidence that the order was obtained through fraud on the court"). A record of a c. 209A order has long-term collateral consequences for a defendant, creating "a blemish on [his] record for the rest of [his] life." *Id.* at 736. See *Frizado* v. *Frizado*, 420 Mass. at 594 n.2.

[8] See Guidelines for Judicial Practice: Abuse Prevention Proceedings § 2:07 commentary (Dec. 2000) ("If the court in which a person initially seeks protection under c. 209A has jurisdiction, the person should be heard as soon as possible in that court, and should not be sent to another court"). Referring a case for mediation is particularly troubling in light of the statute's explicit directive that "[n]o court shall compel parties to mediate any aspect of their case." G. L. c. 209A, § 3. See Guidelines for Judicial Practice: Abuse Prevention Proceedings § 1:01. In addition, research conducted for the United States Department of Justice indicates that, "[d]uring any given academic year, 2.8 percent of women [in college] will experience a completed and/or attempted rape . . . [T]he level of rape and other types of victimization found in the survey becomes an increasing concern when the victimization figures are projected over a . . . full college career." Fisher et al., Natl. Inst. of Justice & Bureau of Justice Statistics, U.S. Dept. of Justice, The Sexual Victimization of College Women 33 (Dec. 2000). See Natl. Inst. of Justice, U.S. Dept. of Justice, Sexual Assault on Campus: What Colleges and Universities Are Doing About It 3, 8 (Dec. 2005) ("Less than 5 percent of completed and attempted rapes of college students are brought to the attention of campus authorities and/or law enforcement"; "A majority of campus administrators believe that requiring victims to participate in adjudication discourages reporting").

[9] See Guidelines for Judicial Practice: Abuse Prevention Proceedings § 5:01

or inadmissible evidence, or even interrupt an argument or a witness examination that has become repetitious, he should not terminate a hearing without ensuring that he has heard all the relevant and admissible evidence once. See *C.O.* v. *M.M.*, 442 Mass. 648, 657 (2004) ("[W]hile a judge may limit cross-examination for 'good cause' in certain situations, see *Silvia* v. *Duarte*, 421 Mass. 1007, 1008 [1995]; *Frizado* v. *Frizado*, [420 Mass.] at 597-598, judicial discretion is not 'unlimited,' and 'each side must be given a meaningful opportunity to challenge each other's evidence.' *Frizado* v. *Frizado*, *supra* at 598 n.5").

Under all the circumstances of this case, including, particularly, what might be thought to be irregularities in the procedures employed here, we think it better that the matter be heard before a different judge.

*Conclusion.* The order vacating the abuse prevention order is vacated, and the matter is remanded for a new hearing before a different judge.[10]

*So ordered.*

---

(Dec. 2000) ("[E]ach side must be given a meaningful opportunity to challenge the other's evidence").

[10]The defendant's request for appellate attorney's fees and costs is denied.