NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-924                                        Appeals Court

G.B.  vs.  C.A.

No. 17-P-924.

Norfolk.      May 3, 2018. - November 1, 2018.

Present:  Sullivan, Blake, & Englander, JJ.

Abuse Prevention.  Protective Order.  Res Judicata.

Complaint for protection from abuse filed in the Dedham
Division of the District Court Department on June 30, 2016.

A motion to extend an abuse protection order was heard by
Paul J. McCallum, J.

Syrie D. Fried for the defendant.

BLAKE, J.  Following a three-day evidentiary hearing, a

judge of the District Court extended an abuse prevention order,

which had been issued ex parte, for a period of one year.

The defendant appeals,[1] claiming that the evidence was insufficient to issue the G. L. c. 209A order (209A order) and that the doctrine of res judicata precludes entry of the order. We affirm.

1.  Chapter 209A proceedings.  a.  December 4, 2015, complaint.  We summarize the facts as the judge may have found them.  Compare Aguilar v. Hernandez-Mendez, 66 Mass. App. Ct. 367, 367-368 & n.1 (2006).  The parties were involved in a dating relationship for close to three years.  Their relationship ended on December 2, 2015.  The following day, December 3, the defendant, a Boston police officer, appeared at the plaintiff's workplace.[2]  A struggle ensued when he attempted to return ceramic flowers to the plaintiff, which he had taken from her home after having given them to her as a gift about a year earlier.  The incident was captured by the plaintiff's workplace security cameras, from two different angles.  The video equipment did not record sound.

The videotape recordings show that the plaintiff threw the flowers in the trash, and the defendant, who had moved behind the service counter, attempted to, and finally did, retrieve

---

[1] The plaintiff did not participate in this appeal.

[2] The plaintiff's workplace is located on a busy street in Boston.

them.  The plaintiff lunged at the defendant, pointing long fingernails toward his face, and a struggle ensued.  Some of the struggle appears on the recording, showing the plaintiff attempting to take the flowers back, and the defendant keeping them away from her.  The parties then went off camera for a period of time.  The plaintiff eventually landed on the ground, injuring her face and lip.[3]  The recording did not capture how she landed there or how she was injured.  The parties then came into the range of the camera and became visible on the recording.  As the plaintiff attempted to call the police, the defendant tried to get the cellular telephone (cell phone) away from her; he boxed her in to a corner of the store.  The plaintiff was initially unsuccessful in calling the police; the defendant disconnected and muted her cell phone.  The defendant admitted that he had done so, contending that he wanted to talk to the plaintiff about the situation because "it might not be good for [her]."  As a result of the 911 hang-up call, a 911 operator called back and the defendant answered the plaintiff's cell phone.  The defendant then left the store and walked across the street to the police station.[4]  Officers arrived on the scene

---

[3] A Boston police detective noticed a red mark near the plaintiff's eye and some swelling and redness around her mouth.

[4] The defendant was not assigned to this police station.

and spoke to him at length. They then came in the store, and the recording was played for them. Initially, they did not speak to the plaintiff; she spoke Spanish and none of the officers spoke Spanish. Eventually, a Spanish-speaking officer arrived and assisted in interviewing the plaintiff. The plaintiff was transported to a hospital, treated, and released.

The following day, December 4, 2015, both parties appeared at the West Roxbury Division of the Boston Municipal Court, each seeking a 209A order against the other. The judge requested that the video recording of the incident be brought to the court. After viewing the video, the judge denied both 209A requests.[5]

Sergeant Detective John Hamilton, a member of the Boston police department domestic violence unit, was assigned to this case. Following his investigation, Hamilton determined that the plaintiff was the aggressor. As a result, he sought a criminal complaint against her for assault and battery on a family member, with a hearing date of February 2, 2016. The defendant was not charged with any offense. The matter was also referred to the police department's internal affairs division because it

---

[5] The only transcript in the record on appeal is for the evidentiary hearing held in the Dedham District Court in July, 2016, which resulted in the extension order now on appeal. The defendant has not provided us with any other hearing transcripts.

was a domestic violence incident involving a Boston police officer.

b. January 15, 2016, complaint. Approximately six weeks later, on January 15, 2016, the plaintiff returned to the West Roxbury court house and filed another complaint seeking a 209A order. In her affidavit, the plaintiff alleged that on December 9, 2015, the defendant followed her in his motor vehicle. She stated that she was sitting in the passenger seat of a motor vehicle when the defendant pulled up next to her and looked at her with "anger in his face." When she grabbed her phone to call 911, the defendant drove away. She further alleged that, on January 2, 2016, the defendant solicited a friend from Spain to call her and "threaten [her] to not go to court" on February 2, 2016. The plaintiff averred that the defendant was intimidating her and that she did not feel safe. A different judge denied her request for a 209A order.

c. Clerk magistrate hearing. On February 2, 2016, the parties appeared before a clerk magistrate for a hearing on the criminal complaint application against the plaintiff stemming from the December 3, 2015, altercation. After the hearing, and with both parties' assent, the clerk magistrate took no action. She told the parties that she would hold the application "in abeyance" for sixty days and that, if there were no further incidents, the complaint would be dismissed. She also told the

parties to stay away from one another.  The application was ultimately dismissed with the following notations:  "no probable cause found," "request of complainant," and "failure to prosecute."

d.  May 12, 2016, complaint.  On May 12, 2016, the plaintiff returned to the West Roxbury court house and filed another complaint seeking a 209A order.  The complaint itself stated that the defendant carried a gun, and listed December 3 and 9, 2015, as prior abuse dates.  In her affidavit, which directed the plaintiff to "[d]escribe in detail the most recent incidents of abuse," she alleged that the defendant was "not complying with the order of not contacting me."  Specifically, she alleged that the defendant drove by her work; that, on May 7, 2016, he had contacted her on an Internet application called "WhatsApp," and that he "went to Housing to try to tell lies."[6] She also stated that the defendant was following her from her children's school and that internal affairs was investigating him.  The plaintiff's request for a 209A order was continued for a two-party hearing on May 19, 2016, at which time both parties appeared.  A third judge denied the requested order.

---

[6] At the evidentiary hearing that resulted in the extension order now on appeal, see part 1.e., infra, the defendant acknowledged sending the plaintiff a text message on WhatsApp, but testified that he did so in error.  He hung up the call when he realized his mistake and did not leave a message.

        e.  June 30, 2016, complaint.  On June 30, 2016, the

plaintiff returned for a fourth time to the West Roxbury court

house seeking a 209A order.  Because the plaintiff had moved to

a location outside of the West Roxbury jurisdiction, she was

referred to the Dedham District Court.  There, she applied for a

209A order, which was granted after an ex parte hearing.  The

extension of this order is the subject of the present appeal.

In the June 30 complaint, the plaintiff recounted the December

3, 2015, altercation, indicating that the defendant grabbed her,

struck her in the face, pushed her, and slammed her against the

ground.  She also claimed that two different judges on two

different dates ordered the defendant to stay away from her, not

to drive by her job, and not to contact her in any way, and that

he had violated those orders on five separate dates.[7]  She stated

that she is "tired of being afraid and always looking over [her]

shoulders."  The judge entered an ex parte 209A order and

scheduled the matter for a further hearing.  A different judge

presided over a three-day evidentiary hearing and extended the

_____

        [7] When asked by the judge at the ex parte hearing in Dedham
District Court whether her requests for 209A orders had been
denied in the West Roxbury Division of the Boston Municipal
Court because she did not live within that court's jurisdiction,
she answered that the order was denied "because we both agreed
not to talk to each other and not to contact each other."  This
was not accurate.

209A order for one year, to July 14, 2017. This appeal followed.

2. Sufficiency of the evidence of abuse. We review the issuance of a 209A order "for an abuse of discretion or other error of law." E.C.O. v. Compton, 464 Mass. 558, 562 (2013). "[A] judge's discretionary decision constitutes an abuse of discretion where [the reviewing court] conclude[s] the judge made a clear error of judgment in weighing the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). A plaintiff seeking the extension of an abuse prevention order must prove "by a preponderance of the evidence . . . that the defendant has caused or attempted to cause physical harm, committed a sexual assault, or placed the plaintiff in reasonable fear of imminent serious physical harm." MacDonald v. Caruso, 467 Mass. 382, 386 (2014). See Iamele v. Asselin, 444 Mass. 734, 736-737 (2005). "In reviewing the judge's decision to [allow] the plaintiff's request for an extension of her protective order, we will not substitute our judgment for that of the trier of fact. We do, however, scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts" (quotation omitted). Id. at 741.

The defendant argues that the plaintiff failed to prove, by a preponderance of the evidence, that she suffered abuse.[8]  He focuses his claim on the fact that the only "new" evidence presented by the plaintiff in support of the 209A request was an incident where the defendant drove by the plaintiff's workplace. While we might agree that that incident, in isolation, would be insufficient for the issuance of a 209A order, this does not end the inquiry.  Our cases are clear that "[i]n evaluating whether a plaintiff has met her burden, a judge must consider the totality of the circumstances of the parties' relationship." Id. at 740.  This is so because "[s]uch consideration furthers the Legislature's purpose to establish a statutory framework to 'preserv[e] . . . the fundamental human right to be protected from the devastating impact of family violence.'"  Id., quoting Champagne v. Champagne, 429 Mass. 324, 327 (1999).  Indeed, in evaluating whether an initial 209A order or its extension should issue, the judge must "examine the words and conduct 'in the context of the entire history of the parties' hostile relationship.'"  Vittone v. Clairmont, 64 Mass. App. Ct. 479, 487 (2005), quoting Pike v. Maguire, 47 Mass. App. Ct. 929, 930 (1999).

---

[8] As pertinent here, abuse is defined as "attempting to cause or causing physical harm"; [or] "placing another in fear of imminent serious physical harm."  G. L. c. 209A, § 1.

Here, each party sought to introduce the video recording of the December 3, 2015, incident, as each contended that the recording would vindicate him or her, respectively. In discussing with counsel the evidence that would be offered, the judge stated, "I think I have to hear everything to make a decision." In response, counsel for the plaintiff suggested that the parties stipulate to present evidence from "December 3, 2015 onwards," to which counsel for the defendant responded, "That's fine." The judge's statement and the parties' stipulation is consistent with Iamele and its progeny. The touchstone of an analysis as to whether a plaintiff has met her burden in a 209A proceeding must include a consideration of the totality of the circumstances of the parties' relationship.[9] The judge properly considered the events of December 3, 2015, and the subsequent actions of the defendant in considering the plaintiff's request for an extension of the 209A order.

---

[9] Here, those facts include the defendant's failure to stay away from the plaintiff both before and after the sixty-day window imposed by the clerk magistrate; the internal affairs investigations, which are likely to engender hostility; the parties' demeanor in court; and the likelihood that the parties will encounter one another in the course of their usual activities where the defendant is a Boston police officer, and the plaintiff's workplace is on a main thoroughfare in Boston. See Iamele, 444 Mass. at 741.

We agree with the defendant that the video recording shows the plaintiff acting in an aggressive manner, and that the plaintiff's testimony was conflicting at times. However, it was ultimately up to the judge to determine the credibility of the witnesses. He could have believed her version of events, or not. Indeed, he would have been within his discretion in finding that the plaintiff was the initial aggressor in the December, 2015, incident, or that it involved mutual combat. Neither finding, however, would negate the further discretion afforded the judge to consider this incident in the totality of the circumstances surrounding the request for the 209A order at issue in this case.

Both parties testified to their version of what occurred on the video, and what occurred off camera. As to what was not captured on the recordings, the judge heard conflicting evidence. The plaintiff testified that the defendant hit her and threw her to the ground. The defendant testified that while his back was turned, she grabbed him, lost her grip, and fell. Although we review documentary evidence de novo, we review other evidence under the usual standard. See, e.g., Commonwealth v. Hoyt, 461 Mass. 143, 148 (2011); Commonwealth v. Bean, 435 Mass. 708, 714 n.15 (2002).

Overall, the judge was in the best position to assess the parties' credibility. Not only did he observe the parties as

they testified, but he viewed the events on the recordings, and he heard the testimony of all the witnesses concerning what happened on and off camera, as well as the conduct of each of the parties subsequent to the December, 2015, incident.  This conduct includes, but is not limited to, the defendant's efforts to prevent the plaintiff from calling 911, the defendant's repeated intrusions into the plaintiff's day-to-day activities over the course of the next several months, and the utter lack of allegations that the plaintiff attempted to contact the defendant during that time.  This evidence is sufficient to support the judge's conclusions.  See S.T. v. E.M., 80 Mass. App. Ct. 423, 429 (2011) ("Credibility determinations and an evaluation of the sufficiency of all the evidence are matters for the hearing judge to decide").  See also Adoption of Larry, 434 Mass. 456, 462 (2001) (deferring to judge's assessment of witness credibility).

In considering whether the plaintiff was in reasonable fear, the judge implicitly credited the evidence that the defendant interfered with the plaintiff's efforts to call 911,[10]

_____

[10] That the plaintiff did not include this in her affidavit is not dispositive.  This was a factual and legal conclusion that the judge was permitted to make having viewed the video tape recording and observed the witnesses' testimony.  Indeed, victims of domestic violence may disclose details of the abuse they suffered over time or in vague or contradictory terms.  See A. Olagunju & C. Reynolds, Domestic Violence, 13 Geo. J. Gender

an action which is tantamount to intimidating a witness.[11]
Hamilton testified that the plaintiff attempted to call 911
prior to the defendant making any such call.[12]  As a result of
this testimony, the following exchange occurred between the
judge and Hamilton:

Q.:  "And further on did . . . [the defendant] ever inform
you that he had hung up one of the calls to 911?"

A.:  "He did not."

Q.:  "Had you known that[,] would that have given rise to
the issuance of a criminal complaint against him?"

A.:  "I don't know.  I, I don't believe it would have."

. . .

Q.:  "Have you ever charged someone with intimidation of a
witness when they hang up a phone call?"

A.:  "I have not personally, no sir."

Q.:  "Wouldn't that give rise out of the statute to
intimidation if someone hung up -- "

A.:  "I believe it would, sir."

---

& L. 203, 250 (2012).  Moreover, the plaintiff testified in some
detail about this incident at the evidentiary hearing.

[11] Cf. Commonwealth v. Fragata, 480 Mass. 121, 129 (2018)
(where defendant did not allow the victim to call 911 and would
not let her leave, "the prosecutor could have argued that the
defendant attempted or caused physical injury to the victim or
intimidated her to prevent her from contacting the police, i.e.,
with the intent to interfere with a criminal investigation").

[12] A Boston police incident history form was admitted in
evidence.  It reflected abandoned calls during the altercation.

On direct examination the plaintiff was asked, "Do you fear [the defendant]?" to which she responded, "A lot, a lot, a lot, a lot." There was a sufficient basis for the judge to conclude, based on the totality of the circumstances, that the plaintiff's subjective fear of physical harm was objectively reasonable. See Smith v. Jones, 75 Mass. App. Ct. 540, 544-545 (2009). Cf. V.J. v. N.J., 91 Mass. App. Ct. 22, 25 (2017) (in a civil harassment prevention order proceeding, it is necessary to look at the whole course of the defendant's conduct).

Although the judge did not make findings of fact, in extending the order, he stated, "[A]fter hearing and consideration of all the evidence and the reasonable inferences I've drawn from all the evidence, I find that the plaintiff, [G.B.] has met her burden of proof in this case and I'm extending [the] order against [C.A.] for a period of a year." Indeed, where we are able to discern a reasonable basis for the order in the judge's rulings and order, no specific findings are required. See S.T., 80 Mass. App. Ct. at 429; Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006) (affirming extension where judge made no oral or written findings, but "[t]he judge's questions during the hearing and her ultimate decision make it clear that she credited [the plaintiff's] version of the evidence and rejected [the defendant's] conflicting testimony"). Contrast Iamele, 444 Mass. at 741

(vacating and remanding where judge found that plaintiff was in fear, but, without further explanation, declined to extend c. 209A order).

3. Collateral estoppel. The defendant next claims that the judge erred in considering the December 3, 2015, incident because in December, 2015, and May, 2016, two different judges had previously determined that the defendant's actions on December 3 did not constitute abuse.[13] He argues that principles of res judicata prevent a reconsideration of the incident that was already litigated in his favor. We view this issue as one of issue preclusion, or collateral estoppel.[14]

_____

[13] While the record reflects that neither of the parties' December, 2015, c. 209A complaints resulted in stay away orders, the defendant did not provide a transcript of the December 4, 2015, hearing. Nor did he provide a transcript of the May 19, 2016, hearing. See note 5, supra. Accordingly, we are unable to determine the reasons that the judges declined to issue the requested orders. It is the appellant's burden to provide us with a complete record. See Mass. R. A. P. 18 (a), as amended, 425 Mass. 1602 (1997).

[14] "The term 'res judicata' includes both claim preclusion, also known as true res judicata, and issue preclusion, traditionally known as collateral estoppel." Mancuso v. Kinchla, 60 Mass. App. Ct. 558, 564 (2004). While the defendant frames his argument as claim preclusion, we view it as one of issue preclusion, as he contends that on prior occasions judges determined that he did not abuse the plaintiff on December 3, 2015. "[A] party is precluded from relitigating an issue when: (1) there was a final judgment on the merits in [a] prior adjudication; (2) the party against whom estoppel is asserted was a party (or in privity with a party) to the prior adjudication; (3) the issue in the prior adjudication is identical to the issue in the current litigation; and (4) the issue decided in the prior adjudication was essential to the

The defendant asked the judge to view the video recordings of the December 3 incident and stipulated to the admission of this evidence. The parties agreed below that the entire course of conduct was relevant, see Iamele, supra, and an appeal arguing a different theory of the evidence therefore is unavailing. As the issue of collateral estoppel was not argued below, it is waived. See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006) ("An issue not raised or argued below may not be argued for the first time on appeal" [quotation omitted]).

Even if the defense of collateral estoppel were not waived, it is unavailable for a separate reason as well. To consider the applicability of issue preclusion, "we look to the record to see what was actually litigated" in the prior proceedings. Kobrin v. Board of Registration in Med., 444 Mass. 837, 844 (2005). If the doctrine is asserted as a defense, as is the case here, "[t]he guiding principle . . . is whether the party against whom it is asserted 'lacked a full and fair opportunity to litigate the issue . . . .'" Martin v. Ring, 401 Mass. 59, 62 (1987), quoting Fidler v. E.M. Parker Co., 394 Mass. 534, 541 (1985). On this record, we cannot say that the issues in the

earlier judgment." McLaughlin v. Lowell, 84 Mass. App. Ct. 45, 56 (2013), quoting Porio v. Department of Revenue, 80 Mass. App. Ct. 57, 61-62 (2011).

prior 209A complaints, whether credited by the various judges or not, were identical to those in this case and therefore, actually litigated.  See McLaughlin v. Lowell, 84 Mass. App. Ct. 45, 56 (2013), quoting Porio v. Department of Revenue, 80 Mass. App. Ct. 57, 61-62 (2011).  This complaint and each complaint and affidavit previously filed by the plaintiff recited both historical and new incidents involving the defendant.  See M.B. v. J.B., 86 Mass. App. Ct. 108, 110-111 (2014).  Furthermore, we do not have the prior 209A hearing transcripts, and we are unable to ascertain the basis of those earlier decisions.[15]  As a result, issue preclusion is not available to the defendant, and the judge's decision must be upheld for this reason as well.  See Day v. Kerkorian, 61 Mass. App. Ct. 804, 809 (2004).  Cf. Krapf v. Krapf, 439 Mass. 97, 109 (2003) (rejecting the defendant's claim of res judicata where the "record was not sufficiently developed to enable the court to determine the judge's reasons for dismissing the complaint . . . with prejudice").[16]

---

[15] It is, however, clear from the dockets before us that this was the only multi-day hearing involving multiple witnesses.  Direct and cross-examination was extensive.

[16] Cf. Adoption of Frederick, 405 Mass. 1, 5-6 (1989) (findings of fact in a prior care and protection proceeding should not have preclusive effect; nor should they be dispositive on a subsequent petition to dispense with parental consent to adopt); Adoption of Karla, 46 Mass. App. Ct. 64, 70 (1998), quoting Cennami v. Department of Pub. Welfare, 5 Mass.

<u>July 15, 2016, extension
order affirmed</u>.

_____

App. Ct. 403, 408 (1977) ("[i]n any proceeding involving the custody of a child concerns of res judicata must inevitably give way to an overriding concern for the welfare of the child").