NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-277

J.W.

vs.

T.S.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

What began as friendly social media conversations about local politics between two people from Winthrop devolved into a situation in which the plaintiff felt targeted by the defendant's comments in his social media posts, private messages, and text messages.  On January 18, 2024, the plaintiff applied for a harassment prevention order (c. 258E order), pursuant to G. L. c. 258E, after her requests that the defendant stop communicating with her went ignored.  The judge did not issue a c. 258E order at the ex parte hearing and continued the case to February 21, 2024, for a two-party hearing.  On February 21, 2024, the parties agreed to participate in mediation in lieu of a two-party hearing.  On March 7, 2024, the parties entered

into a written agreement to stay away and have no contact with one another, and they agreed they would not post about each other personally on social media.[1]  The parties presented the agreement to the judge, who approved the agreement, and no c. 258E order issued.  While the mediation agreement seemingly was effective in preventing contact between the parties for a period of time, the defendant filed a motion to vacate the mediation agreement because it did not specify an end date.  On February 5, 2025, the parties appeared for a hearing on the defendant's motion to vacate, and the judge conducted an evidentiary hearing to determine whether a c. 258E order should issue.  Both parties testified, and at the conclusion of the hearing, the judge issued a c. 258E order against the defendant for two years.

The defendant has appealed from the issuance of the c. 258E order, arguing, among other things, that the plaintiff failed to establish three qualifying acts of harassment and that the judge erred by issuing the c. 258E order for two years.  Because there is insufficient basis in the record on which a c. 258E order could have lawfully issued, we remand the case for entry of an order vacating and setting aside the harassment prevention order.

---

[1] This agreement was later approved by a judge after "inquiry."

2

Discussion. To obtain a harassment prevention order, a plaintiff must demonstrate "harassment," which the statute defines in relevant part as "[three] or more acts of willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property and that does in fact cause fear, intimidation, abuse or damage to property." G. L. c. 258E, § 1. In reviewing the issuance of a harassment prevention order, "we consider whether the judge could find, by a preponderance of the evidence, together with all permissible inferences," that the defendant committed three or more qualifying acts of harassment aimed at a specific person. A.T. v. C.R., 88 Mass. App. Ct. 532, 535 (2015). No specific findings are required if, after reviewing the record, we can "discern a reasonable basis for the order in the judge's rulings and order." G.B. v. C.A., 94 Mass. App. Ct. 389, 396 (2018). The plaintiff bears the burden of establishing that the three acts were "maliciously intended," defined by the statute as being "characterized by cruelty, hostility, or revenge." A.T. v. C.R., 88 Mass. App. Ct. at 535. "The definition of 'harassment' in c. 258E was crafted by the Legislature to 'exclude constitutionally protected speech,' . . . and to limit the categories of constitutionally unprotected speech that may qualify as 'harassment' to two:  'fighting words' and 'true threats.'" Van Liew v. Stansfield, 474 Mass. 31, 37 (2016),

3

quoting O'Brien v. Borowski, 461 Mass. 415, 425 (2012). See Seney v. Morhy, 467 Mass. 58, 63 (2014) ("Conduct may constitute civil harassment where an individual willfully and maliciously uses 'fighting words' . . . or uses 'true threats'" [citation omitted]). True threats have been defined as "words or actions that -- taking into account the context in which they arise -- cause the victim to fear [physical] harm now or in the future and evince intent on the part of the speaker or actor to cause such fear." O'Brien, supra at 425. See A.R. v. L.C., 93 Mass. App. Ct. 758, 760 (2018).

The defendant argues that there was insufficient evidence for the judge to have found the defendant committed three qualifying acts of harassment. The plaintiff's testimony at the evidentiary hearing, which the judge credited, included her testimony that in 2017 she and the defendant had "amicable conversations about community issues" on social media and later by text messages, e-mail messages, and telephone. However, in the following year or two, the defendant began sending her countless e-mail and text messages that contained offensive language, insulting and ridiculing her about her positions on bike lanes and transportation issues. One such instance occurred in 2019, when the defendant disagreed with the plaintiff's position on how best to address traffic issues in the town. The plaintiff sent the defendant an e-mail message in

4

which she expressed her displeasure and frustration with the defendant's communication style and what she believed was his hostile tone toward her. The defendant replied with a particularly caustic e-mail message response, leaving the plaintiff feeling attacked and vulnerable.[2]

After a lull in communication between 2019 and 2022, the defendant once again began to frequently send Facebook messages to the plaintiff in the summer of 2022. At that point, the plaintiff testified that the defendant's behavior escalated despite her multiple requests that he refrain from contacting her or speaking about her in public and even after she blocked him from communicating with her on Facebook. The defendant posted comments about her on a Facebook group called "Winthrop Votes" in which he was the moderator, criticizing the plaintiff on a variety of topics, including the plaintiff's support of a certain candidate for political office and, in a different post, ridiculing her for taking her infant child to an event supporting bike lanes. The plaintiff testified that in October

---

[2] The defendant's e-mail message to the plaintiff stated, "GO FUCK YOURSELF!! You don't feel safe, I don't give a rat[']s ass, I hope it motivates you to leave Winthrop. Like I said before, people like you make me fucking sick. You think you do no wrong and you think you know everything. Please go back to the state of losers and stop trying to turn Massachusetts into the shithole that California is." At the hearing, the defendant acknowledged that his e-mail message response was not respectful.

of 2023, during which time the defendant was publicly criticizing the plaintiff's support of a bike lane in Winthrop, the defendant parked his truck directly in front of her home, even though there were open parking spaces elsewhere on the street. In a January 2024 "Winthrop Votes" podcast, the defendant focused his attention on the plaintiff, telling the audience that he was "going after" the plaintiff and that she was "about to be exposed." In November 2024, after the plaintiff voted in a local election and exited a polling location with her young child, the defendant was outside and said "smells like shit" as she walked past.

At the conclusion of the hearing, the judge stated in oral findings that there were "at least two" instances of harassment, crediting "that one in '23, and I'm going to credit October 20th." We discern from the record that the first instance the judge relied on was the October 2023 incident in which the judge found that the defendant intentionally parked his car in front of the plaintiff's home to send her a message that "he knows where she lives" and for the purpose of intimidating her. While it is unclear what specific instance of harassment the judge credited from 2023, it appears to be the November 2024 incident outside the polling station on election day. Even assuming, without deciding, that these two instances qualify as harassment when considered in the totality of the circumstances, we can

6

discern no evidence of a third qualifying act of harassment. The defendant's manner of communicating with the plaintiff and his use of social media to discuss her was undoubtedly rude, offensive, and abrasive. On this record, however, the plaintiff has not sustained her burden of proof to show that the defendant's statements fall within the definition of true threats as described in O'Brien. To support the issuance of a c. 258E order, a true threat must be intended to cause "fear of physical harm or fear of physical damage to property" and must in fact cause such fear. O'Brien, 461 Mass. at 427.

At the hearing, the plaintiff agreed that the defendant never physically harmed or threatened to physically harm her or any member of her family. The defendant's statements, including his statement to the plaintiff to "go fuck yourself," that he did not care if she felt safe, and that he hoped that she would move out of Winthrop -- troubling and offensive as they were -- failed to satisfy the threshold requirement of harassment as a direct or indirect threat. Similarly, the defendant's statements on his podcast that the plaintiff was "about to be exposed," asking "why am I going after [the plaintiff]?" and suggesting that others send the plaintiff a message that "the guys on Winthrop Votes want to know who's lying," are not sufficient to establish harassment. We have carefully reviewed the entire record and conclude that none of the other statements

7

on the defendant's podcast or other social media comments constitute harassment as defined under G. L. c. 258E, § 1. Rather, they fall within the category of protected speech under the First Amendment to the United States Constitution.  Vacatur of the c. 258E order in this case is required.  Finally, we reject the plaintiff's argument, unsupported by any authority, that the mediation agreement approved by the judge in May 2024 amounted to or was the functional equivalent of a c. 258E order. A harassment prevention order must comply with all of the requirements set forth in G. L. c. 258E, § 3 (d), and must also not "extend for a period exceeding 1 year." G. L. c. 258E, § 3 (d).

The case is remanded for the entry of an order vacating and setting aside the harassment prevention order, and for further actions required by G. L. c. 258E, § 9.

So ordered.

By the Court (Walsh, Toone & Tan, JJ.[3]),

Paul Little

Clerk

Entered:  February 3, 2026.

---

[3] The panelists are listed in order of seniority.