NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-747

K.D.F.

vs.

D.M.F.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, K.D.F., is the former wife of the defendant, D.M.F.  On April 9, 2025, K.D.F. filed a complaint seeking an ex parte abuse prevention order pursuant to G. L. c. 209A (restraining order) against D.M.F.  The complaint alleged that K.D.F. was in fear of imminent serious physical harm.  A judge of the District Court issued the order which required, among other things, that the defendant not abuse, contact or come within ten yards of K.D.F., and to "refrain from engaging in any coercively controlling behavior as defined in [G. L.] c. 209A, § 1."[1]  At a subsequent two-party hearing held on April 22, 2025,

_____

[1] On September 18, 2024, an amendment to the Abuse Prevention Act expanded the definition of abuse to include "coercive control."  See G. L. c. 209A, § 1 (d) (a), as amended

a different judge found that a one year extension of the order was necessary to protect K.D.F. from the likelihood of abuse due to D.M.F.'s "coercive control."  On appeal, D.M.F. claims that K.D.F. failed to meet her burden of proving abuse based on a reasonable fear of imminent serious physical harm or coercive control.  D.M.F. also claims that the judge violated his right to due process by (1) depriving him of a meaningful opportunity to be heard before extending the order, (2) shifting the burden of proof to him, and (3) exhibiting a predisposition in favor of K.D.F.  He further argues that he did not have proper notice that K.D.F. was seeking a restraining order based on coercive control.  For the reasons that follow, we conclude that K.D.F.'s testimony, which the judge specifically credited, established that she was reasonably in fear of imminent serious physical harm and the restraining order, therefore, was properly extended.  We further conclude that D.M.F.'s due process rights were not violated.

Background.  Both parties appeared and were represented by counsel at the extension hearing.  Each testified and provided

through St. 2024, c. 118, § 4 (2024 amendment).  As relevant here and in pertinent part, coercive control is defined as "a pattern of behavior intended to threaten, intimidate, harass, isolate, control, coerce or compel compliance of a family or household member that causes that family or household member to reasonably fear physical harm or have a reduced sense of physical safety or autonomy."  Id.

2

different versions of events.  The judge did not issue written findings, although as we have already noted, she did state that she found K.D.F. credible.  Accordingly, we recite the evidence based on K.D.F.'s version of events.

The parties had been married for twelve years when K.D.F. filed for divorce in November 2024.  The two agreed to co-parent their children pursuant to a negotiated "nesting agreement" under which they would take turns staying with the children in the marital home.  Just before the agreement was set to begin, K.D.F. filed the complaint underlying this appeal.  At the two-party hearing, K.D.F. testified that D.M.F.'s aggression and intimidation had escalated from the time she filed for divorce in November.  She explained that D.M.F. had a history of depression and alcoholism and had been prescribed anti-depressants and Antabuse by his physician but he stopped taking the medications during the prior year.  She recounted that one time in January 2023, D.M.F. slapped their two-year-old son in the face and later said that he could not promise it would not happen again because he could not control his anger.  A few weeks before divorce proceedings began, he expressed suicidal ideation and also drove the children when he was drinking.  Following the initiation of divorce proceedings, D.M.F.'s consumption of alcohol increased as did his erratic behavior and D.M.F. also became increasingly angrier.  K.D.F. pointed to a

3

number of recent incidents which caused her to be fearful of her physical safety. In December 2024, she and D.M.F. had a disagreement over signing a release to permit D.M.F. to take the children to Brazil. D.M.F. became furious over the situation, confronted K.D.F., and "blocked" her in the closet by standing in the doorway. Then, in late January, K.D.F. asked D.M.F. not to drink when he had the children with him and D.M.F. became irate. He stood inches away from K.D.F., slammed his fist on the kitchen counter next to K.D.F., and said: "if you poke the bear, I'm going to come get you." About two weeks later, after K.D.F. had informed her attorney about the defendant's increased drinking, D.M.F. again became angry. He "corner[ed]" K.D.F., slammed his fist next to her, and threatened that he would attempt to obtain fifty-fifty custody of the children. At around the same time, D.M.F., who was taking the children to Atlanta to visit family, became upset upon learning that K.D.F., who was going to Atlanta to visit friends, would be taking the same flight. While K.D.F. was sitting on the couch working, D.M.F. approached her and punched the back of the couch hard enough to "shake[] the whole couch." A few days later, D.M.F. confronted K.D.F. over her insistence on a "Soberlink" requirement in the proposed divorce settlement. On this occasion, D.M.F. blocked K.D.F. in the bathroom by standing in the door with his hands on the door frame and indicated he would

4

fight the requirement costing K.D.F. "hundreds of thousands of dollars." Lastly, about a week before K.D.F. obtained the ex parte restraining order, D.M.F., who continued to be angry about the divorce, threatened K.D.F. stating, among other things, "you're going to get what you deserve," "I'm going to come for you," and "karma's going to get you." D.M.F. was in K.D.F.'s "face" and followed her throughout the house as she attempted to get away from him. K.D.F. testified that she had an "immediate fear for my life" and had never been "so terrified." K.D.F. took refuge near their au pair's bedroom and slept in the room of one of their sons until D.M.F. left the home a few days later.

In extending the order, the judge said "It's about credibility . . . [and] I believe the plaintiff. I'm extending the order based on that."

Discussion. We review the extension of a 209A order "for an abuse of discretion or other error of law" (quotation and citation omitted). Vanna V. v. Tanner T., 102 Mass. App. Ct. 549, 552 (2023). In conducting our review, we accord the "utmost deference" to "the credibility determinations made by the judge who heard the testimony of the parties . . . [and] observed their demeanor" (citation omitted). Noelle N. v. Frasier F., 97 Mass. App. Ct. 660, 664 (2020).

5

As both parties acknowledge, K.D.F. bore the burden to prove by a preponderance of the evidence that she was suffering from abuse as defined in G. L. c. 209A, § 1, and that "an extension of the order is necessary to protect her from the likelihood of 'abuse.'"  Vera V. v. Seymour S., 98 Mass. App. Ct. 315, 317 (2020), quoting Iamele v. Asselin, 444 Mass. 734, 739 (2005).

The statute defines abuse to include "attempting to cause or causing physical harm," "placing another in fear of imminent serious physical harm," and "coercive control."  G. L. c. 209A, § 1.[2]  Here, K.D.F. checked the box on a preprinted form that specified D.M.F. "placed me in fear of imminent physical harm." However, ultimately, apparently in part due to the inclusion in the ex parte order that D.M.F. refrain from engaging in coercive behavior and in part due to the judge's interjection at the two-party hearing that coercive control was evident, K.D.F. argued that she was in need of protection both because she was in fear of imminent physical harm and because D.M.F. had subjected her to coercive control.

We first address D.M.F.'s claim that the judge erroneously relied on "emotional abuse" because that term is not included within the statute's definition of coercive and controlling

---

[2] See footnote 1.

6

behavior.  We agree that the statute does not explicitly define coercive control as including "emotional abuse."[3]  However, given our conclusion that the evidence credited by the judge was sufficient to prove that K.D.F.'s fear of imminent serious physical harm was objectively reasonable, we need not decide whether and in what circumstances evidence of "emotional abuse" may establish coercive control.  In addition, we need not decide, as D.M.F. urges, whether there was insufficient evidence that D.M.F. engaged in a pattern of behavior that included any of the conduct described in G. L. c. 209A, § 1 (a) (i)-(ix) or a single act of conduct described in § 1 (b).

Regarding the sufficiency of the evidence to establish abuse based on fear of imminent serious physical harm, D.M.F. argues that K.D.F. failed to meet her burden of proof because there was no evidence that he ever struck K.D.F. or was otherwise physically violent toward her.  However, "for the plaintiff's fear of imminent serious physical harm to be reasonable, it is not necessary that there be a history -- or even a specific incident of physical violence." Constance C. v. Raymond R., 101 Mass. App. Ct. 390, 395 (2022), quoting Noelle N. v. Frasier F., 97 Mass. App. Ct. 660, 665 (2020).

---

[3] We note however that the list of enumerated examples of coercive control are intended to be illustrative and not exhaustive.  See G. L. c. 209A, § 1.

7

Rather, to determine whether a plaintiff's apprehension of anticipated physical force is reasonable, we look at "the actions and words of the defendant in light of the attendant circumstances." Constance C., supra at 395, quoting Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 143 (2006).

In this case, the circumstances, which include the defendant's increasing volatile behavior, and escalating anger towards K.D.F., were such that a reasonable person would be warranted in fearing for her personal safety. See Constance C., supra at 395-396 (plaintiff's description of defendant's escalating anger and threats to commit suicide supported issuance of abuse prevention order); Noelle N. v. Frasier F., 97 Mass. App. Ct. 660, 665 (2020) ("erratic and unstable behavior, in the context of an escalating and emotional argument" may create reasonable fear that "'force might be used'" [citation omitted]); Ginsburg, 67 Mass. App. Ct. at 145-146 (husband's increasing anger and intimidating behavior sufficient to justify ex-wife's objectively reasonable fear of imminent serious physical harm). In sum, K.D.F.'s affidavit and testimony, which the judge credited, required a finding that D.M.F. placed K.D.F. in reasonable fear of imminent serious physical harm.[4] See

---

[4] Furthermore, as the judge found K.D.F. to be credible in all respects, and her testimony was sufficient to establish her entitlement to an extension based on a reasonable fear of imminent physical harm, there is no need to remand the case for

Nan N. v. Rex R., 106 Mass. App. Ct. 601, 609-611 (2026) (in light of incidents of husband's physically imposing conduct, blocking movement, and pushing plaintiff, even if judge erred regarding coercive control prong of abuse definition, "extension order was independently supported on the ground that the wife suffered abuse through reasonable fear of imminent serious physical harm").

Given our conclusion, D.M.F.'s remaining arguments do not require much discussion. It matters not that the evidence of coercive control was insufficient or that D.M.F. allegedly had no notice that K.D.F. would rely on coercive control to meet her burden. While it is true, as D.M.F. claims, the judge prematurely expressed her intention to extend the order, she recognized her mistake and proceeded to hear D.M.F.'s testimony. Lastly, we are not persuaded that the judge improperly shifted the burden of proof to D.M.F. or that the fact that the judge exhibited some unwarranted impatience toward D.M.F. violated his right to due process.[5]

_____

additional findings or further consideration. See Vera V., 98 Mass. App. Ct. at 318, quoting G.B. v. C.A., 94 Mass. App. Ct. 389, 393 (2018) ("Where we are able to discern a reasonable basis for the order in the judge's rulings and order, no specific findings are required"). Contrast Iamele v. Asselin, 444 Mass. 734, 741 (2005) (noting that evidence was adequate to justify extension of order but remanding because judge's credibility determinations were not clear).

[5] K.D.F.'s motion for appellate attorney's fees is denied.

<u>Order dated April 22, 2025,
extending abuse prevention
order affirmed</u>.

By the Court (Vuono,
Ditkoff & D'Angelo, JJ.[6]),

Clerk

Entered:  June 3, 2026.

---

[6] The panelists are listed in order of seniority.

10